[Civ. No. 5142.   Second Appellate District, Division Two.—March 4, 1929.]

ROY STAPLES, Respondent, v. L. W. BLINN LUMBER COMPANY (a Corporation), Appellant.

E. S. Williams for Appellant.

John B. Haas and John D. Home for Respondent.

STEPHENS, J., *pro tem.*—The plaintiff below, who is the respondent here, was the owner and operator of a garage located on the westerly side of a main thoroughfare known as Harbor Boulevard, which runs from the center of the city of Los Angeles to the harbor. The garage was set back from the pavement line something like ten feet. About even with the southerly wall of the building, but on the street line, is a small restaurant or barbecue stand. A Paige automobile, used as a tow-car in connection with the business of the garage, was standing in front of and close to the garage. The Riverside-Redondo Boulevard, sometimes called the Compton-Redondo Boulevard, crosses Har-

bor Boulevard just a few feet north of the garage herein referred to. Defendant's lumber truck with trailer was traveling southerly along the westerly side of Harbor Boulevard, and while in the intersection of the two boulevards referred to an automobile with trailer, coming up from the rear, attempted to and did pass the truck on its left side. Other cars at the time were approaching the intersection from the south, and still others were a short distance back of the automobile and trailer. The automobile with trailer swerved back into its right side of the road too quickly to completely clear the truck, and the right side of the trailer struck the left front hub of the truck. The latter vehicle left the pavement, turned to the right and, describing an arc, plunged head-on into the Paige car, damaging it as well as two Ford cars not belonging to plaintiff, standing just within the garage.

Plaintiff recovered judgment in the superior court for the damages to all three cars, with damages for certain business losses occasioned by the wreck of the tow-car. Defendant has appealed to this court and asks a reversal of the judgment on the ground that no negligence on the part of defendant was shown, and further, that since the two Ford cars did not belong to plaintiff, he could not recover for their damage without showing an assignment of interest to him. It may be stated without further consideration that plaintiff has shown no right to recover for the damage to the Fords. We shall next consider the question of negligence.

Plaintiff bases his claim of negligence upon two points: (1) that the truck was traveling faster than the law allows, and (2) that the truck's steering-wheel was not the proper size for the handling of the machine in such an emergency. Several witnesses, driving along the highway at the time, place the truck's speed at the rate of ten to fifteen miles per hour immediately before it was struck by the trailer. Plaintiff testified that he did not see the truck leave the pavement but did see it just before it hit the Paige car. He estimated the speed of the truck at about eighteen or twenty miles per hour. He heard no brakes applied and saw no skid marks. The truck driver told him that rather than run into the barbecue stand, where there were women and children, he had turned into the garage. The land in the vicinity of the accident slopes from the pavement downward

to the garage. Claude Staples, a brother of plaintiff, testified that he saw the truck leave the pavement and estimated its speed at that time to be in excess of twenty miles per hour; that it was at first headed for the barbecue stand, but turned to the right, directly into the Paige car; and that the truck driver told him that he had been "hubbed" and that this pulled the steering-wheel out of his hand—that he could not hold it with that sized wheel. Defendant's garage foreman testified that the truck, including engine and brakes, was in good repair and that it was equipped with an automatic governor which limited its speed to fifteen miles an hour. After the accident he found the left front wheel hub-cap smashed and the front wheels out of line. On cross-examination he said that the governor would not function with the clutch in neutral.

The testimony of the truck driver as to the accident was as follows: "As I was entering the intersection of Compton and Harbor boulevard I slowed down to within six or eight miles an hour, and as my truck was passing the southern line of the intersection a car with a two-wheel trailer came out from behind passing me in the intersection, cutting ahead, the trailer catching left front wheel of my truck, jerking the wheel out of my hand, turning my truck with right angles with the road, throwing it down the slope into two cars standing before a garage, smashing the two cars. As the car struck the wheel and jerked the wheel from my grasp, numbing my hand to the extent that I was unable to apply the brake promptly. The truck proceeding five or ten feet before I was able to set the brakes. Upon seeing that I would be unable to straighten the truck up in time to avoid hitting a small restaurant and knowing there were women waitresses in the restaurant I allowed the truck to go into the cars in preference to striking the restaurant, and at the same time using every effort to stop the truck before it struck the cars." The truck ran about 100 feet from the point of impact with the passing trailer to the point of collision with the tow-car.

Plaintiff claims that the truck was being operated at an unlawful rate of speed, which constituted *prima facie* negligence, and cites section 118b of the California Motor Vehicle Act, Statutes 1923, chapter 46, title IX. But we cannot apply this section, for the reason that its application is

premised upon certain conditions such as the carrying capacity of the truck, its equipment as to tires, *et cetera,* and none of these conditions is covered by the evidence. The question to be determined is then simplified to this: Is there substantial evidence in the case to the effect that the truck was being driven negligently, or was the truck negligently equipped or conditioned? If there is substantial evidence of negligence, either as to the operation of the truck or as to its equipment or condition, did such negligence proximately contribute to the injury?

There does not appear to be any circumstances which would indicate negligence in the operation, equipment, or condition of the truck at the time of the impact of the passing trailer, unless it can be found in the evidence that the truck's steering-wheel was inadequate or that the truck's speed was so excessive as to be a proximate cause of the injury. There is no evidence but that the steering-wheel was of standard size, and the testimony regarding the wheel amounts to no more than an expression by the truck driver that under these unusual circumstances he could not control the truck with it. It must not be overlooked that the driver also testified, in close connection with the steering-wheel testimony, that his hand was benumbed by the impact. It was, of course, the driver's duty to so handle his machine as to keep it under control, but it is going too far to say that he must so handle it that when hit as he was hit he must even then be able to keep it under complete control. Certainly, he is not required to anticipate such an accident, and least of all within an area where overtaking and passing another car is prohibited by law. Section 125 of the Motor Vehicle Act reads in part as follows: "Overtaking a vehicle. (a) Any vehicle overtaking another vehicle proceeding in the same direction shall pass at least two feet to the left thereof, and shall not again be driven to the right side of the highway until reasonably clear of such overtaken vehicle. . . . (c) The driver of any vehicle shall not drive the same so as to pass or overtake any other vehicle going in the same direction at any intersection of public highways unless directed so to do by a traffic or police officer nor upon a curve where the driver's view along the highway is obstructed within a distance of one hundred and fifty feet."

The only evidence as to the speed of the truck before and up to the moment it started to leave the pavement im-

mediately after the impact of the passing trailer is that the truck was going not to exceed fifteen miles per hour. Neither of the Staples brothers noticed the truck before it was in the act of leaving the highway and starting down the incline toward the garage. It is but natural that the truck, out of control and going downgrade, would increase rather than diminish speed. We think there is an entire lack of substantial evidence to support the theory that the truck was being driven at a negligent rate of speed when the impact on the highway occurred. ■ Observing that women were in imminent danger of life and limb, the truck driver managed, under stress of great surprise and danger to himself and with a benumbed hand, to divert the truck's course so as to avoid a catastrophe. He did more than might well have been expected of him. It is so well known that authorities need not be cited that a person suddenly thrown into an unexpected plight is not required to use the best judgment possible as measured under ordinary circumstances. ■ We do not think there was any proof of negligence on the part of the truck driver. We are not at all sure that the trial judge thought so either, for a remark from him in the course of the trial would indicate that he thought the trespass would support a recovery for the injury. The mere mention thereof outside the stress of trial, of course, demonstrates the error in this.

Plaintiff cites the old "squib" case and argues that it favors his contention here. Again, but a moment's consideration of the squib case reveals it on all-fours authority for the liability of the driver who collided with the truck and sent that vehicle out of control, and for the vindication of the truck driver who so unwillingly was caused to assume the role of the innocent but damaging squib.

■ What we have already said effectively disposes of plaintiff's claim that the doctrine of *res ipsa loquitur* is controlling in this case, and no further comment relative thereto is required.

The judgment is reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.